**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MAZEN HANNA, individually, and
OLYMPUS INSURANCE COMPANY
a/s/o Mazen Hanna, and PROGRESSIVE
AMERICAN INSURANCE COMPANY          Case No: 8:13-cv-3225-JSM-MAP
a/s/o Mazen Hanna,

                Plaintiffs,

vs.

WARD MANUFACTURING, INC.,

                Defendant.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A**
**MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

      This case arises from a residential fire that occurred on August 20, 2011 at the home of

plaintiff, Mazen Hanna.  The fire destroyed the Hanna home and its contents, including two

automobiles in the garage.  Plaintiffs filed this action against Ward Manufacturing  ("Ward")

under strict liability and negligence theories, focused on defendant Ward's corrugated stainless

steel tubing ("CSST") product which was used to transport propane gas throughout the Hanna

home.  It is plaintiffs' position that the CSST product has an inferior wall thickness which makes

it susceptible to perforation during routine lightning storms.  Once perforated, the propane gas is

released from the tubing and ignited by the heat of the molten perforation, giving rise to a

propane gas fueled fire.

      This matter was tried before the Honorable James S. Moody, Jr., U.S.D.J., commencing

on April 4, 2016 and concluding with a verdict rendered in favor of the plaintiffs on April 8,

2016.  As plaintiffs demonstrated during the course of the trial in this matter, the CSST product

in the Hanna home was perforated by lightning, leading to a propane gas fueled fire that destroyed the home.  The jury determined that the Ward CSST product was defective and unreasonably dangerous and that defendant Ward was negligent in the design of the product.  The jury also found defendant Ward negligent for failing to issue a post-sale warning of the known deficiencies in the CSST product.  The jury awarded damages to the plaintiffs in the total amount of $1,187,156.88, which was amended to reflect pre-judgment interest for a total judgment of $1,431,228.64.  Defendant now seeks a ruling for judgment as a matter of law, or alternatively a motion for a new trial.

## I.   **APPLICABLE STANDARD**

A motion for renewed judgment as a matter of law must be denied, unless the moving party shows that the non-movant "presents no legally sufficient evidentiary basis for a reasonable jury to find for [him] on a material element of [his] cause of action."  Fed. R. Civ. P. 50*; see also Wilkerson v. Seymour,* 626 F. App'x 816, 818 (11th Cir. 2015).  At this stage, the Court may neither make credibility determinations nor weigh the evidence as that function remains the province of the jury.  *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000); *see also McCray v. R.J. Reynolds Tobacco Co.*, No. 3:09-CV-11895-J-37, 2012 WL 2115486, at *1 (M.D. Fla. June 11, 2012).  The court will "consider all of the evidence presented at trial and resolve any material factual disputes in favor of the non-moving party."  *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617 (11th Cir. 2015).  The non-moving party need only to "provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law."  *Gilbert v. City of Miami Gardens*, 625 Fed. Appx. 370, 371 (11th Cir.  2015) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1308 (11th Cir.1998)).

When a motion for new trial is raised in the alternative, pursuant to Fed. R. Civ. P. 59(a)(1)(A), "the Court should rule on the motion for judgment as a matter of law first." *McCray v. R.J. Reynolds Tobacco Co.*, 2012 WL 2115486, at *1 (M.D. Fla. June 11, 2012) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 253 (1940)).  A party may move for a new trial on the grounds "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Penny v. Williams & Fudge, Inc.*, 840 F. Supp.2d 1314, 1319 (M.D. Fla. 2012).  As this Court has held, "…the trial judge must determine if in his opinion, the verdict is *against the clear weight of the evidence* . . . or will result in a *miscarriage of justice*, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Mendez v. Unitrin Direct Prop. & Cas. Ins. Co.*, 622 F. Supp. 2d 1233, 1237 (M.D. Fla. 2007) (quoting *George v. GTE Directories Corp.*, 195 F.R.D. 696, 701 (M.D. Fla. 2000)) (emphasis added).  Further, "[t]o assure that the judge does not simply substitute his judgment for that of the jury….new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the *great-not merely the greater-weight of the evidence*." *Id.* (emphasis added); *see also Penny*, 840 F. Supp.2d at 1319; *Soliday v. 7-Eleven, Inc.*, No. 2:09-CV-807-FTM-29, 2012 WL 3612266, at *2 (M.D. Fla. Aug. 21, 2012).

## II.   **ARGUMENT**

Defendant's motion is meritless for five reasons.  First, the jury rationally concluded that the Government Rules Defense does not apply where the standard with which the defendant allegedly complied does not address the specific, known risk.  Second, despite suggestions to the contrary, no expert testimony was required to assess the adequacy of a warning that defendant

admittedly neglected to provide to either consumers or intermediaries.  Third, the jury reasonably

concluded that the learned intermediary defense did not apply because defendant plainly failed to

provide a specific warning to any intermediaries regarding resistance to energy from lightning.

Fourth, Dr. Eagar's testimony was proper because the jury properly weighed his testimony and,

in any case, Dr. Eagar easily satisfied the *Daubert* standard.  Finally, this Court's jury

instructions were entirely consistent with Florida law and did not confuse the jury, nor was there

any indication that the jury was confused during deliberations.  For these reasons, this Court

should deny defendant's Motions.

### A. The Jury Concluded on the Basis of Ample, Credible Evidence that the Presumption Provided by Fla. Stat. § 768.1256 Did Not Apply in this Case.

The jury reasonably concluded that the Government Rules Defense codified at Fla. Stat. §

768.1256 did not apply, based in part on the testimony of defendant's own President and Chief

Executive Officer, Arthur Guidi.  Defendant incorrectly complains that the jury had no legally

sufficient basis for this finding, but defendant failed to satisfy the threshold requirement that the

standard at issue was designed to prevent the harm that occurred in this case.

For purposes of the Government Rules Defense, defendant has the burden of proving that

(1) it is entitled to the application of a presumption and (2) the plaintiffs are unable to rebut the

presumption.  *Kaufman v. Wyeth, LLC*, No. 1:02-CV-22692, 2011 WL 10483576, at *7 (S.D.

Fla. Aug. 15, 2011); *see also* Ocasio v. C.R. Bard, Inc., No. 8:13-CV-1962-T-36AEP, 2015 WL

3496062, at *7 (M.D. Fla. June 3, 2015) ("Bard has utterly failed to explain how the G2 filter

complied with all relevant "federal or state codes, statute, rules, regulations, or standards," so the

Court declines to attach any such presumption.").  The presumption will not apply if defendant

merely states "in a conclusory fashion that it is entitled to this presumption."  *Tillman v. C.R.*

*Bard, Inc.*, 96 F. Supp.3d 1307, 1348 n.28 (M.D. Fla. March 30, 2015); *see also Kaufman v. Wyeth, LLC.*, 1:02-CV-22692, 2011 WL 10483576, at *7 (S.D. Fla. Aug. 15, 2011).

Defendant fails to note that Fla. Stat § 768.1256(1) applies only when each of three essential elements are met.  For the presumption to apply, the defendant must prove that it (1) "[c]omplied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing the death or injury;" (2) "[t]he ***codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred***;" and (3) "[c]ompliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the product."  Fla. Stat § 768.1256 (1) (a)-(c) (emphasis added).

Here, the jury rationally concluded that defendant failed to satisfy the second element because the standard with which defendant allegedly complied, ANSI LC-1, does not address resistance to energy from lightning.  Ward President Arthur Guidi testified that ANSI LC-1 does not address resistance to energy from lightning or resistance to any foreseeable weather condition at all, for that matter.  Rather, he testified that ANSI LC-1 only generally addresses the distribution and installation of CSST products.  Similarly, defendant employee Jeff Soechting, also testified that ANSI LC-1 did not address lightning damage.  Despite its conclusion to the contrary, defendant failed to prove that ANSI LC-1 was remotely designed to prevent the lightning damage at issue in this case.

Defendant similarly states in conclusory fashion that it was "*undisputed*" that it complied with the Florida Building Code and NFPA standards.  Def's Mot. for J. as a Matter of Law at 3. This bare conclusion fails for the same reasons discussed above.  Defendant failed to show that the unnamed Building Code and NFPA standards to which it vaguely refers were specifically promulgated to address lightning damage, that compliance is required in the industry, and that defendant, in fact, complied.

Despite evidence establishing that the presumption did not apply, the jury was still informed of the defense and afforded the opportunity to apply the presumption if it determined that ANSI LC-1 was intended to address resistance to energy from lightning.  As defendant observes in Footnote 1 of its Memorandum of Law, the Court instructed the jury that, if ANSI LC-1 was intended to address damage from lightning, then it may apply the presumption.  Def's Mot. for J. as a Matter of Law at 3, n.1.  However, based on testimony provided at trial, the jury reached the reasonable conclusion that the presumption did not apply.  Resolving all factual disputes in favor of the nonmoving party, and in light of the extensive testimony on point, the Court cannot conclude that there was absolutely no legally sufficient evidentiary basis for a reasonable jury to find that the presumption did not apply in this case.

Moreover, defendant can hardly complain in its motion for a new trial that the verdict was unfair.  The Court properly instructed the jury on the issue and allowed the finder of fact to weigh the evidence.  The defendant was afforded every opportunity available to it under Florida law.  In the end, the jury properly weighed the evidence before it and reached the wholly reasonable conclusion that the presumption set out in Fla. Stat. § 768.1256 did not apply.

**B.**     **Expert Testimony Regarding the Adequacy of a Warning was not Required Where Defendant's Executives Firmly Established at Trial that Defendant Did Not Provide *Any* Lightning-Related Warning.**

No expert testimony is required to explain the adequacy of a warning where the jury is provided with ample evidence showing that the manufacturer provided *no* warning at all. Defendant incorrectly proposes that this case should be taken from the jury because Plaintiff elected not to provide expert testimony on the issue of defendant's failure to warn.  In this case, however, expert testimony is not required.

To support its position, Defendant cites to cases where the manufacturer provided a warning and an expert was needed to opine regarding extent and adequacy of the existing

6

warning.  *See Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1335 (M.D. Fla. 2015) ("In this case, because Bard *did provide some warnings* regarding its G2 filters, "the issue is whether the warning provided to the physician is adequate.""); *Upjohn v. MacMurdo*, 562 So.2d 680, 683 ("The fact remains that the insert warned of the possibility of abnormal bleeding outside of the menstrual period. It would be unreasonable to hold Upjohn liable for not characterizing the bleeding as excessive, continuous, or prolonged.""); *Ocasio v. C.R. Bard, Inc.*, 2015 U.S. Dist. LEXIS 71742 (M.D. Fla. June 3, 2015) ("FU was inadequate because Bard should have additionally provided quantitative comparative failure rates.").  However, as Ward President Arthur Guidi testified, defendant never provided *any* warning pertaining to a specific lightning-related risk presented by the CSST product despite its knowledge of the defect.  As such, the question is not whether the warning is not sufficiently extensive, rather the question is whether such a warning is required at all.

Courts in the Eleventh Circuit have held that expert testimony is unnecessary when *no* warning is provided.  In *Bullock v. Volkswagen Group of America, Inc.*, 107 F. Supp.3d 1305, 1316 (M.D. Ga. 2015), the Middle District of Georgia refused to grant summary judgment on the plaintiff's failure to warn claim.  The defendant argued that the plaintiff's claims were legally insufficient because the plaintiff elected not to present expert testimony.  The court flatly rejected this argument, observing that the crux of plaintiff's argument was that the defendant "knew of the risks with the design but provided *no warning*."  *Bullock v. Volkswagen Grp. of Am., Inc.*, 107 F. Supp. 3d 1305, 1316 (M.D. Ga. 2015) (emphasis in original).  As such the question was "not whether an existing warning was adequately worded or placed" but "whether a warning should have been given at all."  *Id.*  The court held that a jury can comprehend this issue without reference to the testimony of a warnings expert.  *Id.*

7

Like *Bullock*, the question in this case is not whether the existing warning provided by defendant was sufficiently specific.  Rather, the question is whether defendant should have provided a warning *at all* regarding the lightning-related risks posed by CSST products.  Mr. Guidi's testimony was sufficient on this point as it informed the jury that defendant provided *no* warning of known lightning related risk to either a consumer or an intermediary.  From that information, the jury must determine whether *any* warning on the subject should have been provided at all.  Expert testimony on this point would prove both needless and duplicative.  The jury properly weighed the testimony and evidence in this regard in reaching their verdict.

**C.**     **The Jury Rationally Concluded on the Basis of Defendant's President's Testimony that the Learned Intermediary Doctrine Did Not Apply Because the Defendant Failed to Provide Any Warning to an Intermediary of a Known, Lightning-Related Risk.**

A jury may reasonably determine that the learned intermediary doctrine does not apply where the defendant failed to provide *any* warning of a known risk to the intermediary.  Counsel maintains that defendant discharged its duty to warn consumers about known defects in the CSST product based on the learned intermediary doctrine.  Generally, "a manufacturer of a 'dangerous commodity,' such as a prescription drug or a medical device has a duty to warn consumers of the known risks of using its product." *Horrillo v. Cook Inc.,* No. 10-15327, 2012 WL 6553611, at *2 (11th Cir. Nov. 7, 2012).  The manufacturer may raise the learned intermediary doctrine as an affirmative defense "discharge[ing] its duty to warn *by providing an adequate warning* to [an administering professional]—the learned intermediary—rather than the [consumer]." *Id.*  For the defense to apply, the manufacturer must first provide an adequate warning to the intermediary. *Dimieri v. Medicis Pharm. Corp.,* No. 2:14-CV-176-FTM-38, 2014 WL 3417364, at *2 (M.D. Fla. July 14, 2014) ("*If the manufacturer properly warns the physician regarding the known risks*, the learned intermediary doctrine applies and the manufacturer's duty

to warn the consumer is discharged.") (emphasis added).  In a failure to warn case, the plaintiff must only prove that "the warning to the [intermediary] was inadequate and the warning did not sufficiently inform [the intermediary] about the risks involved in [selling the product]."  *Id.* (quoting *Chase v. Novartis Pharm. Corp.,* 740 F. Supp. 2d 1295, 1297 (M.D. Fla. 2006)).

At trial, the jury reasonably concluded that the learned intermediary defense did not apply because defendant failed to sufficiently inform the intermediary of any known risks.  Defendant President Arthur Guidi testified that his company never provided *any* warning of a specific lightning-related risk presented by the CSST product despite its knowledge of the defect.  The court instructed the jury that, "for this defense to apply, you must be satisfied of two things: first, that the manufacturer *fully warned* the intermediary of the dangers in its product; and two, that the manufacturer's reliance on the intermediary to relay the warnings was reasonable under the circumstances."  Jury Inst. No. 17.  Having heard credible testimony from the defendant Ward's President, the jury reasonably concluded that the manufacturer did not fully warn the distributor-intermediary of the known dangers of the product.  Therefore, the learned intermediary doctrine did not apply.  Viewing all of the evidence presented at trial and resolving any material factual disputes in favor of the non-moving party, it is abundantly clear that the jury's determination was firmly founded in a legally sufficient basis.

**D.     Dr. Eagar's Testimony Does not Warrant a New Trial Because the Jury Properly Made its Own Credibility Determination and, in any case, Dr. Eagar Easily Satisfied the *Daubert* standard.**

Defendant inaccurately claims that it is entitled to a new trial due to the admission of testimony from Thomas W. Eagar, ScD, P.E.  As an initial matter, defendant merely criticizes the weight of Dr. Eagar's conclusions, not the admissibility of his testimony.  Again, in ruling on a Rule 50 motion, a Court may not make credibility determinations or weigh evidence as that

function remains the province of the jury. *Reeves*, 530 U.S. at 150. Indeed, this Court specifically instructed the jury that "[a]s with any other testimony, you must decide for yourself whether to rely upon the [expert's] opinion." *See* Jury Instruction No. 7.

That is exactly what the jury did in this case. Although defendant attacks the credibility of Dr. Eagar's testimony under the guise of a *Daubert* argument, the weight of his testimony was properly left to the jury. Indeed, counsel had ample opportunity to test Dr. Eagar's conclusions on cross-examination and present its own expert witnesses to challenge or contradict these conclusions. The jury was instructed to decide for itself whether to rely on the opinion of Dr. Eagar, or to accept defendant's contrary evidence. Ultimately, the jury decided that Dr. Eagar provided credible expert testimony. Despite defendant's pleas to the contrary, this Court should not supplant the jury's proper credibility determination.

To the extent that defendant addresses the admissibility of Dr. Eagar's testimony, this Court properly rejected these arguments in defendant's prior motion *in limine*. To summarize, *Daubert* requires a court to consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology employed by the expert is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016).

Here, defendant does not dispute that Dr. Eagar was qualified or that his testimony assisted the jury in its ultimate determination. Rather, defendant argues that Dr. Eagar's testimony is somehow unreliable. In determining the reliability of an expert's methodology, a court may consider factors such as: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the

technique has been generally accepted in the proper scientific community.  *See McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

Nowhere in defendant's motion does it actually address the reliability factors articulated above.  Instead, defendant criticizes Dr. Eagar's scientific findings – on the source of the arc, the "flame lift off," and indicia of lightning – labeling these findings as "assumptions."  But an analysis of the factors reveals that Dr. Eagar's methodology was indisputably reliable.  As already explained in great detail in Plaintiff's Opposition to Defendant's *Daubert* Motion, Dr. Eagar's methodology has been tested, his technique has recently been subjected to peer review and publication, and his technique has been accepted in the proper scientific community.  *See* Plaintiff's Opposition to Defendant's Motion to Exclude Testimony of Dr. Eagar, ECF No. 50. Indeed, Plaintiff already addressed Dr. Eagar's methodology regarding the source of the arc, the flame lift off, and indicia of lightning in that motion.  Dr. Eagar's methodology was reliable before trial – when this Court originally denied defendant's motion – and it is equally reliable now.

In short, defendant asks the court to disrupt the jury's assessment of the weight of Dr. Eagar's testimony.  To the extent that defendant actually attacks the admission of Dr. Eagar's testimony, the reliability factors articulated above show that Dr. Eagar's methodology was plainly reliable.  Therefore, defendant is not entitled to a new trial based on the admission of Dr. Eagar's testimony.

### E.    This Court's Jury Instructions Were Proper Because They Contained No Substantial Errors and were not Erroneous, Consistent, or Confusing.

Despite agreeing to the jury instructions previously, defendant now argues on a post-verdict motion that those instructions were improper.  As an initial matter, defendant repeatedly complains of improper instruction and jury confusion without actually providing an example of an instance in which the jury expressed confusion.  The jury only asked one question about the

11

instructions, which related to causation.  Defendant does not even address the question in its

motion.  Instead, defendant summarily concludes throughout its motion that the jury "would

have" been left to speculate and "must have" been confused by the Court's instructions.  *See*

Def's Mot. for J. as a Matter of Law at p. 23.  As discussed below, however, the Court's jury

instructions were proper on all counts.

       1.    <u>The Court properly tracked binding Florida law when it instructed the jury
regarding the consumer expectation defense.</u>

Attacking the propriety of Jury Instruction No. 11, defendant suggests the Court should

depart from the binding authority of the Florida Supreme Court by refusing to apply the

consumer expectation test in a design defect case.  Less than one year ago, the Supreme Court of

Florida stated in unequivocal terms, "in approaching design defect claims, we adhere to the

consumer expectations test, as set forth in the Second Restatement, and reject the categorical

adoption of the Third Restatement and its reasonable alternative design requirement."  *Aubin v.*

*Union Carbide Corp.*, 177 So.3d 489, 510 (Fla. 2015).  The Middle District has subsequently

reiterated the *Aubin* court's pronouncement that the consumer expectation test plays a critical

role in determining whether a product was defective.  *See Anderson v. Techtronic Indus. North*

*America, Inc.*, No. 613CV1571ORL40TBS, 2015 WL 7429060, at *3 (M.D. Fla. Nov. 23, 2015).

To further drum support for its contention, defendant cites to cases either decided before

*Aubin* or decided outside of Florida where "courts have [purportedly] struggled with the

consumer expectation issue."  Def's Mot. for J. as a Matter of Law at 16.  After *Aubin*, Florida

law is clear: in design defect cases, courts will apply the consumer expectations test.  In fact,

counsel for defendant has expressly acknowledged the clarity of *Aubin*, posting a legal alert to its

firm web page that notes the "very recent" and "significant" decision of the Florida Supreme

Court in which "the Court specifically rejected the 'risk/utility' test of the Restatement of Torts

(Third), and adopted the 'consumer expectation' test of the Restatement of Torts (Second) in design defect cases."[1]

Despite argument to the contrary, Florida law is neither "a bit undecided" nor does "*pure logic*" compel the Court to disregard the *Aubin* decision.  Def's Mot. for J. as a Matter of Law at 19 (emphasis in original).  Florida courts will apply an iteration of the consumer expectations test when a design defect claim is before it.  In the end, the Court should decline defendant's invitation to depart from the binding authority of the Florida Supreme Court as it did not err in instructing the jury on the consumer expectation test in this particular design defect case.

2.  <u>The Court properly instructed the jury regarding Defendant's failure to warn of a known defect.</u>

The Court properly instructed the jury on plaintiff's failure to warn claim.  In support of its argument, defendant again revives its previous arguments.  First, defendant erroneously maintains that the court erred in providing Instruction Nos. 13 and 14 because plaintiff failed to adduce sufficient evidence.  However, defendant implicitly concedes the existence of the only evidence needed to trigger the instruction.  Defendant states that it tracked the ANSI LC-1 standard "*verbatim.*"  Def's Mot. for J. as a Matter of Law at 19 (emphasis in original).  As defendant's President acknowledged at trial, ANSI LC-1 does not address resistance to energy from lightning or resistance to any foreseeable weather condition at all, for that matter.  He further testified that ANSI LC-1 only generally addresses the distribution and installation of CSST products.  Plaintiffs, therefore, established a firm basis from which the jury could reasonably conclude that defendant failed to provide *any warning* addressing the known defect in this case.

---

[1] *See Legal Alerts: Fla. Products Liability – Supreme Court Adopts Consumer Expectation Test in Design Defect Cases*, Buckley Law Group, http://www.buckleylawgroup.com/legal-alerts.html (last visited May 24, 2016).

Confronting strong evidence that defendant failed to provide the requisite warning, defendant then takes the position that the plaintiff must also affirmatively disprove the possibility that all intermediaries knew of the same lightning-related risk.  Defendant cites to cases where courts dismissed claims specifically because the defendant showed that an intermediary *actually knew* of the defect at issue.  *See Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1283 n.8 (11th Cir. 2002) ("Where a learned intermediary has *actual knowledge* of the substance of the alleged warning and would have taken the same course of action even with the information the plaintiff contends should have been provided, courts typically conclude that the learned intermediary doctrine applies or that the causal link is broken and the plaintiff cannot recover.").  Plaintiff is not required to affirmatively show that *all* conceivable sellers lacked actual knowledge.  Further, defendant provided no evidence showing that distributors possessed actual knowledge of the lightning-related risks presented by defendant's CSST piping.

Defendant flatly concludes that, because the builders of Mr. Hanna's home knew of other Lightning Protection Systems and chose to install CSST, they must have been aware of the specific threat of lightning-induced explosion presented by the CSST piping.  Here, defendant's suggestion can be relegated to the realm of speculation and conclusion.  As defendant's President suggested, the builders were not provided with any warning related to this particular product.  Defendant provided no evidence showing that the intermediaries (a) actually knew of the risks presented by *this* product and (b) chose to install the product regardless.  As such, the court properly permitted the finder of fact to assess the failure to warn claim.

3.    <u>This Court's instructions on strict liability were proper because they are consistent with Florida law, as Defendant acknowledges in its own motion.</u>

Defendant also argues that the jury instructions on strict liability were "confusing." This position is puzzling in light of defendant's argument that the Court erred by not incorporating the

14

risk-utility analysis in its instruction.  Defendant cannot have it both ways: it cannot claim that the Court both improperly included *and* improperly excluded a risk-utility analysis in its instructions.  It is unclear how defendant attempts to reconcile these arguments.

In fact, despite casting the Court's strict liability instructions as "confusing" and "illogical" blend of both tests, defendant actually quotes the Florida standard jury instructions four pages earlier and admits that it retains both the risk-utility and consumer expectation test.  *See* Def's Mot. for J. as a Matter of Law at p. 18-22.  Defendant also discusses the *Aubin* decision at length, where the court expressly observes that "the jury instructions approved by this Court use both the consumer expectations test and risk utility test as alternative definitions of design defect." *Aubin*, 177 So. 3d at 512.  Again, defendant's position is irreconcilable.

4.  <u>Despite Defendant's contentions, this Court's Failure to Warn instructions were not inconsistent.</u>

Defendant then turns to the court's instructions regarding the failure to warn claim, arguing that Jury Instruction No. 14 was "rendered meaningless" by Instruction No. 10.  Defendant, however, does not explain how or why these instructions confused the jury.  Rather, it summarily concludes that they are "absolutely inconsistent" and "must have confused the jury."  But the instructions are not inconsistent – Instruction No. 10 addresses plaintiff's negligence claims, which included a claim that defendant negligently failed to warn purchasers who already had CSST installed in their homes.  Instruction No. 14 addressed defendant's duty to warn entities who purchased the product.  Finally, Instruction No. 17 addresses the learned intermediary doctrine, which involves intermediary warnings to the end user by definition.  None of these instructions contradict each other. There is no reason that the jury would be confused and, indeed, there is no evidence that the jury actually was confused by these instructions.

5.  <u>The court properly instructed the jury regarding the Government Rules Defense codified at Fla. Stat. § 768.1256.</u>

15

The Court properly instructed the jury regarding the Government Rules Defense.  Having previously agreed to the instructions, defendant now argues that Instruction No. 12 is "superfluous" and full of "somewhat argumentative generalities on the strict liability case." Def's Mot. for J. as a Matter of Law at p. 24.  Defendant specifically takes exception to Instruction No. 12, arguing that the court erred by providing an instruction that defendant once insisted upon including.

Defendant first takes issue with the sequence of the instruction.  As an initial matter, the contents of Instruction No. 12 were provided in logical sequential order.  Instruction No. 12 explains the nuances of strict liability to the jury, noting that, generally, fault or knowledge are not considered when assessing a strict liability claim.  The Court then provides the related caveat that jurors may, however, consider whether the manufacturer complied with codes, statutes, rules, regulations, or standards when assessing the manufacturer's liability.

Despite defendant's indication to the contrary, the court is not required to segregate defenses, disrupting the natural progression of legal thought in the interest of providing rigid categorizations.  Moreover, strict liability is not an intuitive concept.  Most jurors are not likely familiar with a legal precept that requires them to ignore the actions and intentions of the alleged wrongdoer.  It, therefore, makes sense for the Court to explain the Government Rules Defense – a narrow caveat to the rule of strict liability– in close proximity to this discussion.

Having taken exception to the placement of the instruction, defendant then scrutinizes the Court's word choice.  It first complains of the use of the word "defense" in Instruction No. 12. Although defendant had an opportunity to raise this issue when the instructions were jointly crafted, it now raises this point on a post-verdict motion.  Regardless, the Court did not err in using the word, as the proper heading of Fla. Stat. § 768.1256 reads: "Government Rules

16

Defense."  To refer to § 768.1256 as anything other than its proper name would be nonsensical.  The Committee charged with formulating the standard jury instructions similarly refers to § 768.1256 as a "defense" in its Note for Use 403.18c.

Defendant then takes issue with the use of the words "rebuttable presumption," concluding that the court erred because it failed to explain "how it affected the plaintiff's burden of proof and what is required to overcome the rebuttable presumption."  However, defendant's attribution of fault is misplaced.  In the Note on Use for Standard Instruction 403.18c, the Committee formulating the instructions describes the "*rebuttable presumption* in the event of compliance or noncompliance with government rules" and noted, "[t]he statute does not state whether the presumption is a burden-shifting or a vanishing presumption," therefore, "[p]ending further development in the law, the committee offers no standard instruction on this presumption."  Florida Standard Jury Instructions in Civil Cases, Note On Use for 403.18c (emphasis added).  Instead, the Committee resolved that it would "*leav[e] it up to the parties* to propose instructions on a case-by-case basis."  *Id.* (emphasis added).  Defendant can only blame itself for failing to either object to this formulation or propose instructions that better explained the concept that now draws its ire.

Defendant concludes by resuscitating the argument that compliance with ANSI LC-1 alone leaves "no question" that the Government Rules Defense applies.  As addressed above, the rebuttable presumption only applies when three critical elements are met.  The second element requires that "[t]he ***codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred***." Fla. Stat § 768.1256 (1) (a)-(c) (emphasis added).

At trial, the defendant's President testified that ANSI LC-1 does not address resistance to energy from lightning or resistance to any foreseeable weather condition at all, for that matter.

Rather, he testified that ANSI LC-1 only generally addresses the distribution and installation of CSST products.  Mr. Guidi's testimony was confirmed by employee Jeff Soechting, who also testified that LC-1 did not address lightning damage.  Therefore, the jury reasonably concluded that defendant did not comply with a standard that was "designed to prevent the type of harm that allegedly occurred."  Moreover, despite weighty evidence indicating that ANSI LC-1 would not trigger the application of the presumption, the court properly presented the question to the jury and the jury rationally concluded on the basis of ample testimony that the presumption should not apply.

## III.   **CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that this Court deny Defendant's Motion for Judgment as a Matter of Law, or in the alternative, Motion for a New Trial, and any other relief deemed just and proper.

COZEN O'CONNOR

By:   /s/  Mark E. Utke
      One Liberty Place
      1650 Market Street, Suite 2800
      Philadelphia, PA  19103
      Phone: 215-665-2164
      Fax: 215-665-2013
      E-mail: mutke@cozen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2016, Plaintiffs' Memorandum in Opposition to Defendant's Motion For Judgment As A Matter Of Law and Motion for a New Trial was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's ECF System.

/s/ Mark E. Utke
Mark E. Utke